UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cr-00315-1 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| ROBERTO PEREZ, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

The defendant, Roberto Perez, is charged with possession with intent to distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing a detectable amount of heroin, and 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1). Perez moves to suppress evidence obtained during the search of a garage on October 25, 2017. For the following reasons, the Court denies Perez's motion [31].

**Background**

On October 25, 2017, law enforcement agents conducted an investigation of Perez, including constant surveillance for approximately five hours, starting at 8:30am. Government witnesses testified at the suppression hearing that they observed Perez leaving a residence on the 3500 block of West Wabansia Street in Chicago, Illinois (the "Wabansia Residence"), from which they observed him retrieve boxes and a white bucket. They then observed him load the boxes and bucket into a car, reenter the vehicle, and drive away.

At approximately 12:40 p.m., agents observed defendant pull the car into an alley of a residence of the 5500 block of Dakin Street (the "Dakin Residence"). Defendant drove the car

1

inside the detached garage (the "Dakin Garage") and the garage door closed behind him. He exited the garage about two minutes later and closed the door.

At around 1 p.m., law enforcement officials conducted a traffic stop of Perez. Perez is a native Spanish-speaker and speaks only limited English. Present at the traffic stop was Task Force Officer Villanueva, who speaks Spanish and was responsible for communicating with Perez. TFO Villanueva testified that in his conversation with Perez, Perez stated that he was doing construction work and that he just a left a garage in which he dropped off some hot sauce. TFO Villanueva testified that Perez provided oral consent for the officials to search his car. Upon a search, they found several garage door openers, which Perez explained he used for construction work.

Following the traffic stop, agents placed defendant in handcuffs and, at defendant's request, transported him to the alley behind the Dakin Garage, where they had observed him shortly before the traffic stop. TFO Villanueva testified that Defendant provided oral consent to search the Dakin Garage and showed the officials which garage door opener to use to open it. TFO Enyart, who was also present at the traffic stop, also testified that Perez gave oral consent to search the garage and told the officers which of the several openers was for the Dakin Garage. Agent Taub testified that she heard over the radio that officers had obtained verbal consent from Perez to search the Dakin Garage. She also testified that TFO Villanueva contacted her requesting that she bring consent forms when she arrived at the scene. She testified that when she arrived, she immediately went to TFO Villanueva's vehicle, where he was sitting with Perez, and observed him translate the forms to Spanish. She then observed Perez signing the forms. Agent Taub additionally testified that she incorrectly noted in her report that Perez gave written consent to search the garage at 2:07pm and that he signed the form some time earlier, but still after the search was under way.[1]

---

[1] During the Government's opening argument, the Court was forewarned that Agent Taub would testify to errors that were made in her report. Indeed, that was the case. Those errors make it difficult to know the exact timeline of events that transpired around the written consent form.

Perez testified that he never provided verbal consent. He also testified that one of the agents took the garage door opener from Perez's car without permission and disappeared with it. He testified that when the officers drove him to the Dakin Garage after the traffic stop, agents were already searching inside. Perez testified that he never provided written consent for agents to search the garage either and noted that the signature on the form was not his.

The officials then used the garage door opener to open the Dakin Garage. During the subsequent search of the Dakin Garage, agents found the white bucket that they observed Perez transporting earlier in the day. Agents searched the white bucket, which contained approximately 3.23 kilograms of heroin and approximately 8.96 kilograms of fentanyl. Agents also found three clear bags containing approximately 692.4 grams of heroin in the corner of the garage close to the back wall. In addition, agents found a black toolbox located by the side of the garage, which contained multiple food saver bags and plastic wrap. This is the evidence Perez seeks to suppress.

**Legal Standard**

The Fourth Amendment protects citizens against unreasonable searches and seizures. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Law enforcement officers may, however, legally search a property without a warrant if they obtain voluntary consent from the owner or from someone with actual or apparent authority over the premises. *United States v. Gevedon*, 214 F.3d 807, 810 (7th Cir. 2000). The Government bears the burden of showing, by a preponderance of the evidence, that they obtained consent to search. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).

**Analysis**

*Expectation of Privacy*

The Government argues that Perez can only challenge the search of the Dakin Garage if he had a reasonable expectation of privacy in it, which, it argues, he did not. A reasonable expectation of privacy is infringed when the defendant exhibits an actual or subjective expectation of privacy and that expectation is reasonable. *See Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Whether a defendant has a reasonable expectation of privacy in property owned by a third person turns on whether he had possession and control of the property, including the right to exclude others from it. *See Byrd v. United States*, 138 S. Ct. 1518, 1522, 200 L. Ed. 2d 805 (2018) (holding that a defendant had an expectation of privacy of a rental car he was driving even when his name was not listed on the rental agreement because he controlled the car and was the only person in it); *Rakas v. Illinois*, 439 U.S. 128, 149, 99 S. Ct. 421, 433, 58 L. Ed. 2d 387 (1978) (noting that a defendant had a reasonable expectation of privacy in his friend's apartment because he "had complete dominion and control over the apartment and could exclude others from it"). Perez bears the burden of proving that he had a legitimate expectation of privacy in the Dakin Garage. *See United States v. Pitts*, 322 F.3d 449, 456 (7th Cir.2003).

Perez has provided enough evidence to show that, at the time of the search, he had control over the Dakin garage and the ability to exclude others from it. He was storing materials there, there was no one else on the premises at the time, and Perez had the only way in—the garage door to which he had an opener. He closed the door after entering the garage earlier in the day, before the traffic stop. Accordingly, Perez has met his burden regarding his expectation of privacy in the Dakin Garageand the Government bears the burden of showing that the officers obtained his consent prior to searching the garage.

*Consent to Search*

Perez argues that the agents searched the Dakin garage without obtaining his consent to do so. He argues that the written consent they obtained after the search began does not sanitize the search and seizure, which violated his Fourth Amendment rights. Perez further argues that the agent's failure to record his verbal consent is evidence that it never happened.

In an effort to meet its burden, the Government has presented witness testimony of three separate officers and agents as to the oral consent. TFO Villanueva testified that he obtained verbal consent from Perez to search the Dakin garage. TFO Enyart testified that he was present when Perez gave verbal consent to search the garage and told him and TFO Villanueva which of the multiple garage door openers in his car would open the garage. Agent Taub testified that she heard that Perez gave verbal consent over the radio. The Government presented other corroborating evidence, including Agent Taub's testimony that TFO Villanueva contacted her after getting verbal consent and asked her to bring consent forms to him at the Dakin Garage. She testified that once she arrived to the garage, she observed TFO Villanueva memorialize the verbal consent in a signed consent form, although that was obtained once the search was already under way. TFO Villanueva also testified to Perez signing the written consent form.

Although Perez claims that he did not sign the written consent form memorializing his verbal consent, his signature was on the form and the defense did not provide further evidence that the signature was a forgery or that it was coerced. Moreover, government witnesses testified to witnessing Perez sign the form. The written consent form is merely corroboration of the verbal consent and was not necessary to conduct the search once Perez gave verbal consent. Thus, the Court's analysis does not substantially change given Perez's arguments as to the timing of the written consent being after the search began. Indeed, even if he had refused to sign a written consent, that would not have vitiated his verbal consent. *See United States v. Thurman*, 889 F.3d 356, 366 (7th Cir.),

cert. denied, 139 S. Ct. 278, 202 L. Ed. 2d 184 (2018) (collecting cases affirming findings of consent despite a defendant's documented refusal to sign a form).

Perez's testimony directly contradicts the testimony of the three government witness who testified at the suppression hearing. The testimony of Agent Taub and TFOs Villanueva and Enyart was consistent and was further supported by their testimony that Perez instructed them to open the garage door with a particular opener. As to Perez's arguments regarding a lack of recording of his verbal consent, the Fourth Amendment does not require that officers record consent and a lack of doing so does not discredit the testimony of agents who witnessed the consent. *See United States v. Thurman*, 889 F.3d 356, 367 (7th Cir.), cert. denied, 139 S. Ct. 278, 202 L. Ed. 2d 184 (2018).

The Court is aware of the inconsistencies around timing that Agent Taub testified to and agrees with the defense that those inconsistencies are concerning. Nonetheless, the Courts finds in its discretion that the Government presented enough corroborating evidence of the verbal consent to tip the scale in favor of their version of events. *See United States v. Punzo*, 208 F. App'x 468, 471 (7th Cir. 2006) (noting that the district court is in the best position to judge credibility of officer testimony when that testimony is contradicted). Next, the Court will analyze whether that consent was knowing and voluntary.

*Knowing and Voluntary Consent*

Finally, during the suppression hearing, the defense argued that verbal consent, if given, could not have been knowing and voluntary because Perez speaks Spanish and only has a middle school education, he was handcuffed at the time and officers read him his *Miranda* rights, and officers never told him that he had a right to refuse consent.

When a defendant claims that he was coerced into consenting, the Government bears the burden of proving otherwise by a preponderance of the evidence. *See United States v. Hicks* (*Hicks II*), 650 F.3d 1058, 1064 (7th Cir. 2011). The Court considers the following factors in assessing whether

6

the totality of the circumstances support a finding of voluntary consent: "(1) the age, education, and intelligence of the defendant; (2) whether he was advised of his constitutional rights; (3) how long he was detained before consenting; (4) whether he consented immediately or was prompted by repeated requests; (5) whether physical coercion was used; and (6) whether he was in custody when he consented." *United States v. Thurman*, 889 F.3d 356, 367 (7th Cir.), cert. denied, 139 S. Ct. 278, 202 L. Ed. 2d 184 (2018)

Although Perez does not speak English, TFO Villanueva communicated with him in his native Spanish when obtaining consent. This fact favors voluntariness. *See United States v. Pineda-Buenaventura*, 622 F.3d 761, 776 (7th Cir. 2010), as amended on denial of reh'g (Oct. 6, 2010) (affirming a finding of verbal consent was voluntary when officers communicated with consenters in their native language). Perez only completed schooling through middle school, there is no evidence that he has compromised intellect or mental capacity. *See United States v. Richards*, 741 F.3d 843, 849 (7th Cir. 2014) (affirming a finding of voluntary consent when there was no evidence that defendant suffered from a diagnosed mental disability or that officers had any reason to believe that he could not consent to the search of his home). Based on testimony of TFO Villanueva, Perez acknowledged that he understood what was being said to him at the time of consent and even offered to bring officers to the garage. At the suppression hearing, Perez testified and responded appropriately to all questions asked of him.

Perez was not under arrest when he consented, but he had been handcuffed and was sitting in a police vehicle. TFO Villanueva testified that he advised Perez of his *Miranda* rights, but Perez testified that never happened. Perez was questioned for only 10 to 15 minutes prior to getting consent and government witnesses testified he had a nervous demeanor but was calm. There is no evidence was Perez was threatened or that officers drew their guns on his at the time of consent.

Finally, the Court takes into account whether Perez was informed of his right to refuse consent, but that knowledge is not a prerequisite to voluntariness. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *U.S. v. Saadeh*, 61 F.3d 510, 518 (7th Cir.1995) (consent to search was voluntary even though suspect was not informed of right to refuse consent). Here, the parties did not present evidence as to whether Perez was told he had a right to refuse consent. The only relevant testimony is that of Perez stating he never consented at all. This factor, therefore, does not weigh in favor of either side.

Based on the totality of the circumstances the Court finds that Perez's verbal consent to search the Dakin Garage was voluntary.

**Conclusion**

For the foregoing reasons, the Court denies Perez's motion to suppress the evidence recovered from the garage on October 25, 2017 [31].

IT IS SO ORDERED.

Date: 10/9/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge